```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

DAVID DOYLE and
LORIA DOYLE,

      Plaintiffs,

v.                                       Civil Action No. 2:08-1442

FLEETWOOD HOMES OF VIRGINIA, INC.,
a foreign corporation,
CMH HOMES, INC., d/b/a LUV HOMES, and
VANDERBILT MORTGAGE AND FINANCE, INC.,

      Defendants.


## MEMORANDUM OPINION AND ORDER

Pending is the motion of the defendants[1] to dismiss plaintiffs' claim for breach of the duty of good faith, filed January 20, 2009.[2] The West Virginia Uniform Commercial Code

---

[1] Defendant Fleetwood Homes of Virginia, Inc. ("Fleetwood Homes") filed a notice of bankruptcy filing on March 12, 2009 and the action has accordingly been stayed as to it.

[2] In contravention of S.D. W. Va. Local Rule 7.1, defendants neglected to file a memorandum in support of their motion to dismiss. Plaintiffs have not, however, objected and because sufficient argument has been set forth in the body of the motion, the failure to comply strictly with the rule is excused.
      Defendants' motion was also filed one day after the court imposed deadline for the filing of motions under Fed. R. Civ. P. 12(b), and in their response, plaintiffs ask the court to strike the motion as untimely. Because plaintiffs have not been prejudiced by the delay, their request to strike the motion is denied.

1

("U.C.C.") provides that "[e]very contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement."  W. Va. Code § 46-1-304 (formerly § 46-1-203).  At issue is whether § 46-1-304 supports an independent cause of action.  For the reasons that follow, the court concludes that it does not, and the motion of the defendants is therefore granted.

I.

As the pending motion is one to dismiss for failure to state a claim upon which relief can be granted, the following facts alleged in the complaint are accepted as true.  Fleetwood Homes manufactures mobile homes, and defendant CMH Homes, Inc. ("CMH Homes")³ is an authorized Fleetwood Homes dealer.  (Id. ¶ 6, 9).  Seeking a mobile home for their personal use, on or about April 19, 2006 plaintiffs David and Loria Doyle entered into a

---

³ The complaint states that CMH Homes is a West Virginia corporation doing business as LUV Homes.  (Compl. ¶ 6).  The defendants' notice of removal, however, states that CMH Homes is in fact a corporation organized under the laws of Tennessee, operating under the fictitious name, Freedom Homes.  (Not. of Removal ¶ 5).  Attached to the notice of removal is a document printed from the website of the West Virginia Secretary of State evidencing the incorporation of CMH Homes under Tennessee law and listing LUV Homes, Freedom Homes and Clayton Homes as names under which CMH Homes conducts business.  (W. Va. Sec. of State Printout, Not. of Removal, Ex. 3).

contract with CMH Homes for the purchase of a new Fleetwood mobile home. (Id. ¶¶ 9-10). Plaintiffs' purchase of the mobile home was to be financed by Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), and a credit agreement was entered into to that effect. (Id. ¶¶ 7, 16, 77).

When plaintiffs purchased the mobile home, CMH Homes provided them with documents containing various express warranties. (Id. ¶ 10, 13). Pursuant to the warranties, all repairs and replacements necessitated by defects in materials and workmanship, as well as all adjustments, would be made free of charge during the warranty period. (Id. ¶ 14). Additional warranties were set forth in a warranty booklet, and in the owner's manual for the mobile home. (Id.)

Plaintiffs allege, upon information and belief, that prior to consummation of the purchase contract, CMH Homes made certain false representations regarding the quality and condition of the mobile home. (Id. ¶ 15). Plaintiffs also allege that CMH Homes, as agent for Vanderbilt, "misrepresented and/or failed to accurately disclose material terms of the subject credit agreement." (Id. ¶ 16). According to the complaint, the plaintiffs relied upon these representations in deciding to purchase the Fleetwood mobile home. (Id. ¶ 17).

When CMH Homes installed the mobile home purchased by the plaintiffs, not only did the company fail to install the home at the agreed upon location and in the agreed upon manner, the company also damaged the home and neglected to follow the installation instructions provided by Fleetwood Homes.  (Id. ¶ 18-19).  Plaintiffs contend that when Vanderbilt disbursed the purchase money to CMH Homes, thereby obligating the plaintiffs to repay the loan, Vanderbilt knew, or should have known, that the mobile home "was not properly installed, was not fit for occupancy, and was otherwise damaged and/or defective."  (Id. ¶ 20).  Upon occupying the mobile home, plaintiffs discovered numerous "nonconformities" caused by "substandard, defective, and/or negligent manufacture, delivery, and installation."  (Id. ¶¶ 21-22).  According to the complaint, these defects "substantially impaired the use, value and/or safety of the home."  (Id. ¶ 21).

Upon realizing the defects in the mobile home, plaintiffs contacted the defendants and, invoking the warranties, requested that the requisite repairs be made.  (Id. ¶ 23).  After being afforded an opportunity to remedy the defects, the defendants "failed and/or refused to repair the home in a timely manner so as to bring it into conformity with the warranties set

4

forth herein." (Id. ¶ 24).

Given the failure of the defendants to repair the mobile home, plaintiffs notified the defendants of their "rejection and/or revocation of acceptance of the subject home." (Id. ¶ 25). According to the complaint, the acts of the defendants were "willful, wanton and/or carried out with reckless disregard for the rights of the Plaintiffs," and have caused plaintiffs to suffer both pecuniary and psychological harms. (Id. ¶¶ 26-27).

Plaintiffs instituted this action in the Circuit Court of Kanawha County on November 7, 2009. The eleven-count complaint asserts the following claims: Count I, Cancellation of Contract by Rejection; Count II, Cancellation of Contract by Revocation of Acceptance; Count III, Violation of the Magnuson-Moss Warranty Act; Count IV, Breach of Express Warranties; Count V, Breach of Implied Warranty of Merchantability; Count VI, Breach of Implied Warranty of Fitness; Count VII, Breach of the Duty of Good Faith; Count VIII, Unconscionability; Count IX, Common Law Negligence - Negligent Repair; Count X, Unfair or Deceptive Acts or Practices; Count XI, Common Law Fraud and Misrepresentation. In recompense, plaintiffs seek both damages at law and equitable relief.

Invoking the court's jurisdiction under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 through 2312, as well as the court's diversity jurisdiction, defendants removed on December 19, 2008.  (Not. of Removal ¶ 8).  If federal district courts possess original jurisdiction over a civil action filed in state court, the action may be removed by the defendants.  See 28 U.S.C. § 1441(a) and (b).  Claims under the MMWA are cognizable in federal court, and are therefore removable, if the amount in controversy is $50,000 or more.  See 15 U.S.C. § 2310(d)(1)(B) and (3)(B).  According to the notice of removal, the total sales price of the mobile home purchased by the plaintiffs was $191,998.80.  (Not. of Removal ¶ 8).  The court therefore has original jurisdiction over the MMWA claim in Count III of the complaint, and exercises its supplemental jurisdiction over the remaining claims.  See 28 U.S.C. § 1367.  The parties do not contest jurisdiction.

## II.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6)

correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965.  Stated another way, the complaint must

allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; Giarratano, 521 F.3d at 302. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, "the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The task of determining whether the complaint states a plausible claim "is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). This requirement is, however, "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

### III.

As a contract for the sale of "goods," the purchase contract at issue in this action is governed by the general requirements of Article One of the U.C.C., as well as the more specific requirements of Article Two concerning sales.  See §§ 46-1-102 (scope of Article One); 46-2-105(1) (defining goods); 46-2-102 (scope of Article Two).[4]  Thus, by force of § 46-1-304, the purchase contract "imposes an obligation of good faith in its performance and enforcement."[5]  The term "good faith" is defined as "honesty in fact and the observance of reasonable commercial

---

[4] The defendants do not argue that because Fleetwood Homes and Vanderbilt were not parties to the purchase contract, they cannot be held liable for an alleged breach of the obligation of good faith.

[5] The West Virginia legislature revised the West Virginia U.C.C. in 2006.  In doing so, the provision imposing the obligation of good faith, former § 46-1-203, was re-codified at § 46-1-304.  The official comment to § 46-1-304 states that "[e]xcept for changing the form of reference to the Uniform Commercial Code, this section is identical to former Section 1-203."

standards of fair dealing." § 46-1-201(20).[6]

Count VII of the complaint, the only count in issue, states that:

> 60. Defendants breached the duty of good faith implied in the transaction pursuant to the Uniform Commercial Code, *W. Va. Code* § 46-1-203 [§ 46-1-304], by:
> 1. breaching the express and implied warranties hereinbefore described;
> 2. misrepresenting the condition of the subject home;
> 3. misrepresenting the costs of the transaction to Plaintiffs; and
> 4. failing to remedy the problems brought about by the Defendants' unlawful conduct in a timely fashion.

(Compl. ¶ 60). There is no dispute regarding the applicability of § 46-1-304 to the purchase contract. The question is whether a breach of the obligation of good faith found in § 46-1-304 gives rise to an independent cause of action. The plaintiffs say it does; the defendants say it does not. Inasmuch as the court is faced with an unresolved question of West Virginia law, resort must be had to the text of the U.C.C., and to other relevant

---

[6] Prior to the 2006 revision, Article One of the U.C.C. defined good faith as "honesty in fact in the conduct or transaction concerned." See former § 46-1-201(19). As applied to "merchants" under Article Two, however, good faith was defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." See former § 46-2-103(1)(b). Defendants admit that CMH Homes fits the definition of "merchant," (Answer ¶ 6), and therefore whether governed by the current version of the U.C.C., or the version in effect prior to the 2006 revisions, the obligation of good faith imposed upon CMH Homes is the same.

authority, in order to predict how the West Virginia Supreme Court of Appeals would rule if presented with the issue. See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002).

Section 46-1-305 of the U.C.C. seems to support the position of the plaintiffs. It provides that, "[a]ny right or obligation declared by this chapter is enforceable by action unless the provision declaring it specifies a different and limited effect." By its terms, § 46-1-304 imposes an "obligation," and at first blush the text of the statute does not appear to limit the effect of § 46-1-305. As noted by the defendants, however, the official comment to § 46-1-304 states that:

> [t]his section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

§ 56-1-304 cmt. 1. The Supreme Court of Appeals of West Virginia has "recognized the authoritative nature to the official comment

11

to our Uniform Commercial Code." <u>Rohall v. Tweel</u>, 411 S.E.2d 461, 464 n. 3 (W. Va. 1991).  In <u>First National Bank of Ceredo v. Linn</u> the court stated that,

> [t]he official comment to our Code provisions involving the Uniform Commercial Code are taken verbatim from the Official Comments contained in the original Uniform Commercial Code and represent the textual statements of the drafters of the Code and are recognized by courts and commentators as an official source document for interpretation of the code provisions.

282 S.E.2d 52, 54 n. 4 (W. Va. 1981).  Paying heed to the official comments furthers one of the three express "purposes and policies" underlying the U.C.C., namely "[t]o make uniform the law among the various jurisdictions."  § 46-1-103(a)(3).

Consistent with the official comment to § 46-1-304, the vast majority of courts having considered the issue conclude that a breach of the obligation of good faith imposed by force of the U.C.C. does not give rise to an independent cause of action.  <u>See Barnes v. Diamond Aircraft Indus., Inc.</u>, 499 F. Supp. 2d 1311, 1320 (S.D. Fla. 2007) (no independent cause of action under Fla. U.C.C.); <u>Stobner Motors, Inc. v. Aoutomobili Lamborghini S.P.A.</u>, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006) (no independent cause of action under Haw. U.C.C.); <u>Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.</u>, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (no independent cause of action under Ga. U.C.C.); <u>Cedar</u>

View, LTD. v. Colpetzer, No. 05-cv-782, U.S. Dist. LEXIS 7018, at * 9-10 (N.D. Ohio Feb. 24, 2006) (no independent cause of action under Ohio U.C.C.); Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc., 212 F.3d 373, 381 (7th Cir. 2000) (no independent cause of action under Ill. U.C.C.); Best Distrib. Co. v. Seyfert Foods, Inc., 714 N.E.2d 1196, 1205-06 (Ind. Ct. App. 1999) (no independent cause of action under Ind. U.C.C.); Diamond Surface, Inc. v. State Cement Plant Comm'n, 1998 SD 97, ¶ 36-38, 583 N.W.2d 155, 163-64 (S.D. 1998) (no independent cause of action under S.D. U.C.C.); N. Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 606-07 (Tex. 1998) (no independent cause of action under Tex. U.C.C.); Hauer v. Union State Bank of Wautoma, 532 N.W.2d 456, 464 (Wis. Ct. App. 1995) (no independent cause of action under Wis. U.C.C.); Caplan v. Unimax Holdings Corp., 591 N.Y.S.2d 28, 29 (N.Y. App. Div. 1992) (no independent cause of action under N.Y. U.C.C.); Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1391 (11th Cir. 1991) (no independent cause of action under Ala. U.C.C.).

While some cases have found a breach of the U.C.C. obligation of good faith to give rise to an independent cause of action, such cases tend to limit the inquiry to the relevant state's version of § 46-1-305, ignoring the official comment to §

46-1-304 and its reasoning.  Further, many of the cases finding an independent cause of action have subsequently been called into question.  Compare Reid v. Key Bank of S. Maine, 821 F.2d 9, 12-13 (1st Cir. 1987) (finding Maine U.C.C. affords independent cause of action for breach of duty of good faith), and Quality Auto. Co. v. Signet Bank/Md., 755 F. Supp. 849, 851-52 (D. Md. 1991) (finding Maryland U.C.C. affords an independent cause of action in tort for breach of duty of good faith), with Hinman v. Brothers Volkswagen, Inc., No. CV-94-964, 1995 Me. Super. LEXIS 309, at *6-8 (Super. Ct. Me. Sept. 1, 1995) (holding, "Maine does not recognize an independent claim for a breach of the [U.C.C.] implied covenant of good faith."), and Howard Oaks, Inc. v. Md. Nat'l Bank, 810 F. Supp. 674, 677 (D. Md. 1993) (holding, "under the U.C.C. as well as the general law of Maryland, there is no independent duty of good faith in commercial dealing enforceable by an action ex delicto.").

Concluding that "[s]ection 1-203 does not support a cause of action where no other basis for a cause of action exists," 1A Lary Lawrence, Anderson on the Uniform Commercial Code § 1-203:2 (3d ed. 2004), one noted treatise offers the following critique of cases finding that a breach of the obligation of good faith gives rise to an independent cause of

14

action:

> The inherent flaw in the view that § 1-203 supports an independent cause of action is the belief that the obligation of good faith has an existence which is conceptually separate from the underlying agreement. As the above discussion demonstrates, however, this is an incorrect view of the duty. "A party cannot simply 'act in good faith.' One acts in good faith relative to the agreement of the parties. Thus the real question is 'What is the Agreement of the parties?'" Put differently, good faith merely directs attention to the parties reasonable expectations; it is not an independent source from which rights and duties evolve. The language of § 1-203 itself makes this quite clear by providing that the obligation to perform or enforce in good faith extends only to the rights and duties resulting from the parties' contract. The term "contract" is, in turn, defined as "the total legal obligation which results from the parties' *agreement* . . . ." Consequently, resort to principles of law or equity outside the Code are not appropriate to create rights, duties, and liabilities inconsistent with those stated in the Code.

Id. Consistent with this understanding of the obligation of good faith, the West Virginia Supreme Court of Appeals has noted that under the U.C.C., "the obligation of good faith extends only to the 'performance or enforcement' of the business transaction." Barn-Chestnut, Inc. v. CFM Dev. Corp., 475 S.E.2d 502, 508 (W. Va. 1995). Thus, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." Id. at 509.

In the context of considering the viability of an independent cause of action for breach of the West Virginia

common law duty of good faith and fair dealing, the West Virginia Supreme Court of Appeals recognized, "that it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim, and that '[a]n implied contract and an express one covering identical subject matter cannot exist at the same time." Highmark West Virginia, Inc. v. Mountain State Blue Cross Blue Shield, 655 S.E.2d 509, 514 (W. Va. 2007) (internal citations omitted). With this in mind, the court declined to recognize an independent claim for a breach of the common law duty of good faith, and held that such a claim asserted by the plaintiff was "in reality, a breach of contract claim." Id. Thus, under West Virginia law, the common law duty of good faith and fair dealing does not have an "existence which is conceptually separate from the underlying agreement." Lawrence, supra, § 1-203:2. The court sees no reason why the Supreme Court of Appeals would reach a different conclusion under § 46-1-304, particularly in light of the official comment to § 46-1-304, and the weight of authority against finding an independent cause of action.

In light of Barn-Chestnut and Highmark, it seems clear that West Virginia's Supreme Court does not understand the duty of good faith, either at common law or under the U.C.C., to exist

16

independently, or outside the scope of, the contract in which it is implied.  This being the case, and in light of the foregoing, the court finds the Supreme Court of Appeals of West Virginia would conclude that while, "a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract," § 56-1-304 cmt. 1, a breach of the obligation of good faith found in § 56-1-304 does not support an independent cause of action.[7]  Accordingly, the motion of the defendants to dismiss plaintiffs' claim for breach of the duty of good faith is granted.  As noted by the plaintiffs, the complaint does not contain a claim for breach of contract.  (Resp. to Mot. to Dismiss at 4).   Should the plaintiffs wish to amend the complaint solely to assert such a claim, the opportunity to do so will be afforded.

IV.

It is accordingly ORDERED as follows:

---

[7] The court is aware of Knapp v. American General Finance, Inc., 111 F. Supp. 2d 758 (S.D. W. Va. 2000), a case relied upon by the plaintiffs, which implicitly recognizes an independent cause of action for breach of the U.C.C. obligation of good faith.  Knapp, however, did not question the viability of such a claim, and therefore offered no analysis as to whether an independent cause of action would be found to exist under West Virginia law.

1.  The motion of the defendants to dismiss plaintiffs' claim for breach of the duty of good faith be, and it hereby is, granted.

2.  Count VII of the complaint be, and it hereby is, dismissed.

3.  Should plaintiffs wish to amend the complaint to assert a claim for breach of contract they shall do so by August 28, 2009.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: August 14, 2009

_____
John T. Copenhaver, Jr.
United States District Judge